**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

NATHAN HENNESSY,

                                   Plaintiff,                1:19-cv-01027 (BKS/DJS)

v.

LOUIS AIOSSA,

                                   Defendant.

**Appearances:**

*Plaintiff pro se:*
Nathan Hennessy
18-A-1578
Southport Correctional Facility
P.O. Box 2000
Pine City, NY 14871

*For Defendant:*
Abigail W. Rehfuss
Stephen J. Rehfuss
The Rehfuss Law Firm, P.C.
40 British American Boulevard
Latham, New York 12110

**Hon. Brenda K. Sannes, United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I.    INTRODUCTION

Plaintiff pro se Nathan Hennessey brings this action under 42 U.S.C. § 1983 against

Albany Police Department ("APD") Detective Louis Aiossa for malicious prosecution in

violation of the Fourth Amendment. (Dkt. No. 1). Defendant moves for summary judgment

under Fed. R. Civ. P. 56 on the grounds that there was probable cause for the prosecution. (Dkt.

No. 50). Plaintiff opposes Defendant's motion. (Dkt. No. 56). Plaintiff has also filed a motion for

appointment of counsel. (Dkt. No. 62). For the reasons discussed below, Defendant's motion for

summary judgment is granted and Plaintiff's motion for appointment of counsel is denied as

moot.

## II.   FACTS[1]

On October 6, 2015, at approximately 2:40 p.m., the APD received a report that there had

been a shooting resulting in a chest wound at 42 North Manning Boulevard. (Dkt. No. 50-10, at

1). Defendant and other APD officers responded to the scene, and saw a pedestrian, Micheal.

Shinas, giving aid to the victim. (Dkt. No. 50-12, ¶ 3). The victim told Defendant he had been

stabbed; the victim was treated and transported by EMS to Albany Medical Center. (*Id.* ¶ 3).

Surveillance footage from a nearby corner store, American Glass, depicted a physical

confrontation in front of the store, after which the assailant ran north. (*Id.* ¶ 4). APD officers

interviewed Mr. Shinas, who reported that he saw the victim emerge from a cab and fall to the

ground as if he had been shot. (*Id.* ¶ 6; Dkt. No. 50-7). Mr. Shinas looked south for a possible

---

[1] **The facts are drawn from Defendant's Statement of Material Facts, (Dkt No. 50-2), and Plaintiff's response to those statements, (Dkt. No. 56, at 3-6), to the extent the facts are well-supported by pinpoint citations to the record, as well as the exhibits attached thereto and cited therein. The relevant facts are largely undisputed, (Dkt. No. 50-2; Dkt. No. 56, at 3-6); the Court has identified those facts in dispute. The facts are construed in the light most favorable to Plaintiff as the non-moving party. *Gilles v. Repicky*, 511 F.3d 239, 243 (2d Cir. 2007).**

2

shooter and, when he did not see one, he left his vehicle and walked up to the victim. (Dkt. No. 50-12, ¶ 6). Upon seeing the seriousness of the victim's injury, Mr. Shinas called 911. (*Id.*). Mr. Shinas attempted to control the victim's bleeding until the police and EMS arrived. (*Id.*; Dkt. No. 50-7).

Defendant interviewed Diandra Scales regarding what she had seen from her vehicle while she was stopped at a nearby red light. (Dkt. No. 50-12, ¶ 7). Scales reported that she saw the assailant walk down the steps of the American Glass store; turn; and strike the victim in the chest. (Dkt. No. 50-12, ¶ 7; Dkt. No. 50-6). Scales thought that this was some sort of play fighting until she saw that the suspect had what she described as a six-inch silver blade knife in his hands. (Dkt. No. 50-12, ¶ 7). The assailant continued to try to strike the victim before running away. (*Id.*). Scales also called 911. (*Id.*). She described the assailant as a light skinned, possibly Hispanic, male who was "no older than 21 years of age," wearing green fatigue or cargo army style pants with large pockets and a dark sweater. (Dkt. No. 50-6; Dkt. No. 50-12, ¶ 7).

After her interview, Scales sent Defendant a Facebook photograph of the person she believed to be the assailant, together with his Facebook alias, "Nat Bossed Up." (Dkt. No. 50-12, ¶ 8). Defendant "confirmed" that the "Facebook page and the pictures of the person contained therein" were Plaintiff and observed that the individual in the pictures matched the description Scales had provided. (*Id.*; Dkt. No. 50-2, ¶ 7; Dkt. No. 56, at 4). Plaintiff asserts that Scales obtained the Facebook picture from one of her Facebook friends after she asked her friend who stabbed the victim. (Dkt. No. 56, at 2).

In a sworn affidavit, Defendant states that he and another Detective visited the victim at the Albany Medical Center on October 8, 2015, and showed the victim a photo array. (Dkt. No. 50-12, ¶ 9). Defendant further states that the victim "positively identified the Plaintiff, Nathan

Hennessy, as the person who stabbed him on October 6, 2015." (*Id.*). Plaintiff claims that the photo array is not signed or initialed by the victim and that it is "not true" that the victim identified Plaintiff from a photo array. (Dkt. No. 56, at 1, 4). Plaintiff asserts that the victim "denies that he identified anybody in any photo array." (*Id.* at 4).

On October 15, 2015, Defendant received information that Plaintiff was living at 641 4th Avenue in Troy, New York with his mother. (Dkt. No. 50-2, ¶ 10). Defendant applied for a search warrant at the residence to search for evidence associated with the attempted murder. (*Id.* ¶ 11).

On October 30, 2015, APD officers saw Plaintiff leaving his residence and arrested him for attempted murder. Officers executing a search warrant at his residence found an eight-inch knife and a pair of blue shorts with blood stains in the Plaintiff's bedroom. (Dkt. No. 50-11, at 3; Dkt. No. 50-12, ¶ 12). Plaintiff asserts that the evidence taken "had nothing to do with the stabbing." (Dkt. No. 56, at 4).

On November 4, 2015, an Albany County Grand Jury indicted Plaintiff for, inter alia, attempted murder. (Dkt. No. 50-13). The case went to trial, and Plaintiff was acquitted. (Dkt. No. 50-12, ¶ 14). Defendant avers that "the victim refused to attend the trial, testify or otherwise cooperate with the prosecution." (*Id.*). Although Plaintiff "disagree[s]" that his acquittal was based on the victim's refusal to cooperate, (Dkt. No. 56, at 5), there is no record evidence refuting Defendant's sworn affidavit regarding the victim's refusal to attend trial or cooperate with the prosecution.

### III.   STANDARD OF REVIEW

Under Rule 56(a), summary judgment may be granted only if all the submissions taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. A fact is "material" if it "might affect the outcome of the suit under the governing law," and is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see also Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citing *Anderson*). The movant may meet this burden by showing that the nonmoving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322; *see also Selevan v. N.Y. Thruway Auth.*, 711 F.3d 253, 256 (2d Cir. 2013) (explaining that summary judgment is appropriate where the nonmoving party fails to "'come forth with evidence sufficient to permit a reasonable juror to return a verdict in his or her favor on' an essential element of a claim" (quoting *In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 509 (2d Cir.2010))).

If the moving party meets this burden, the nonmoving party must "set out specific facts showing a genuine issue for trial." *Anderson*, 477 U.S. at 248, 250; *see also Celotex*, 477 U.S. at 323-24; *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). "When ruling on a summary judgment motion, the district court must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003). Still, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to

the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and cannot rely on "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986) (quoting *Quarles v. Gen. Motors Corp.*, 758 F.2d 839, 840 (2d Cir. 1985)). Furthermore, "[m]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (quoting *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995)).

Where the plaintiff proceeds pro se, the Court must read his submissions liberally and interpret them "to raise the strongest arguments that they suggest." *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)). However, a pro se party's "'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Jordan v. New York*, 773 F. Supp. 2d 255, 268 (N.D.N.Y. 2010) (citing *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)); *see also Wagner v. Swarts*, 827 F. Supp. 2d 85, 92 (N.D.N.Y. 2011).

## IV.   DISCUSSION

"A § 1983 claim for malicious prosecution essentially alleges a violation of the plaintiff's right under the Fourth Amendment to be free from unreasonable seizure." *Lanning v. City of Glens Falls*, 908 F.3d 19, 28 (2d Cir. 2018). To prevail on such a claim, a plaintiff is "required to show a seizure or other perversion of proper legal procedures implicating his personal liberty and privacy interests under the Fourth Amendment," "that criminal proceedings were initiated or continued against him, with malice and without probable cause," and that those proceedings "were terminated in his favor." *Id.* at 24. "[T]he existence of probable cause is a complete defense to a claim of malicious prosecution." *Stansbury v. Wertman*, 721 F.3d 84, 94-95 (2d Cir. 2013) (quoting *Manganiello v. City of New York*, 612 F.3d 149, 161-62 (2d Cir. 2010)). With respect to claims of malicious prosecution, the Second Circuit has held that the burden of proof rests on the plaintiff to show a "lack of probable cause." *Pinsky v. Duncan*, 79 F.3d 306, 312 (2d Cir. 1996); *see also Ullah v. Office of Dist. Attorney*, No. 07-cv-2687, 2009 WL 2151357, at *5, 2009, U.S. Dist. LEXIS 61607, at *14–15 (S.D.N.Y. July 20, 2009).

Probable cause to commence a criminal proceeding exists when the prosecuting officer has "knowledge of facts, actual or apparent, strong enough to justify a reasonable man in the belief that he has lawful grounds for prosecuting the defendant in the manner complained of." *Rounseville v. Zahl*, 13 F.3d 625, 629 (2d Cir. 1994) (quoting *Pandolfo v. U.A. Cable Sys. of Watertown*, 171 A.D.2d 1013, 1013 (4th Dep't 1991)). "The existence . . . of probable cause in a malicious prosecution suit is . . . determined . . . as of the time the prosecution is commenced." *Rothstein v. Carrier*, 373 F.3d 275, 292 (2d Cir. 2004). "[A]n arresting officer may be held liable for malicious prosecution when a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors." *Llerando-Phipps v. City of New York*, 390 F. Supp. 2d 372, 383 (S.D.N.Y. 2005) (internal quotation marks omitted). "The

question of whether or not probable cause existed may be determinable as a matter of law if there is no dispute as to the pertinent events and the knowledge of the officers." *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996).

"[I]ndictment by a grand jury creates a presumption of probable cause that may *only* be rebutted by evidence that the indictment was procured by 'fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith.'" *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003) (quoting *Colon v. City of New York*, 60 N.Y.2d 78, 83 (1983)). "To rebut this presumption, the plaintiff bears the burden of establishing 'that the indictment was produced by' such fraud or bad-faith police misconduct." *Dufort v. City of New York*, 874 F.3d 338, 352 (2d Cir. 2017) (quoting *Bernard v. United States*, 25 F.3d 98, 104 (2d Cir. 1994)).

Defendant argues that the grand jury indictment for attempted murder in violation of N.Y. Penal Law § 125.25 created a rebuttable presumption of probable cause which Plaintiff has failed to rebut. The Court agrees. Plaintiff argues that the victim denies having identified Plaintiff from the photo array; that the photo array was fabricated; and that the indictment was therefore procured "by police conduct in bad faith." (Dkt. No. 56, at 1-3). Plaintiff's allegations, however, are entirely conclusory and unsubstantiated. "[I]n order to survive a motion for summary judgment on the malicious prosecution claim, [plaintiff] must have submitted evidence sufficient for a reasonable jury to find that his indictment was procured as a result of police conduct undertaken in bad faith." *Savino*, 331 F.3d at 73. Here, there is no record evidence supporting Plaintiff's assertions that the victim did not identify him from a photospread or that the photospread was fabricated. There is no evidence contradicting Defendant's sworn affidavit regarding the victim's photo array identification. "[C]onclusory and speculative assertions of fabrication are insufficient to create a genuine issue of fact with respect to fabrication of

evidence." *Demosthene v. City of New York*, 831 F. App'x 530, 533-34 (2d Cir. 2020) (citing *Cameron v. Cmty. Aid for Retarded Children, Inc.*, 335 F.3d 60, 66 (2d Cir. 2003)). Plaintiff has failed to meet his burden of producing admissible evidence from which a reasonable juror could infer that the indictment was produced by fraud or bad-faith police misconduct.

Defendant also argues that probable cause existed, apart from that rebuttable presumption, based on the Defendant's investigation. (Dkt. No. 50-3, at 8-9). The Court agrees. In addition to the evidence of the victim's photospread identification, there is no dispute that the eyewitness to the incident, Scales, sent Defendant a Facebook photograph and Plaintiff's Facebook page, identifying Plaintiff as the assailant. "[I]t is well-established that a law enforcement official has probable cause to arrest if he received his information from some person, normally the putative victim or eyewitness." *Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000) (quotation marks and citation omitted); *see Reid v. New York City Police Dep't*, No. 19-cv-1220, 2019 WL 1271645, at * 2, 2019 U.S. Dist. LEXIS 44317, at *4 (E.D.N.Y. Mar. 18, 2019) ("Generally, an inculpatory statement from an eyewitness suffices to establish probable cause and defeat claims for malicious prosecution."); *Daughtry v. New York*, No. 12-cv-2655, 2015 WL 2454115, at *3, 2015 U.S. Dist. LEXIS 68627, at * 8 (E.D.N.Y. Feb. 23, 2015) ("A positive photo identification is normally sufficient to establish probable cause to arrest.") (citations omitted). Plaintiff argues, without evidentiary support, that a third party sent Scales this Facebook picture, and that the third party "told [Scales] that [Plaintiff] did it." (Dkt. No. 56, at 3-4). However, even if the Court considered this unsupported allegation, it would not be sufficient to create a triable issue of fact as to probable cause because there is no indication that Defendant knew the Facebook information came from a third party, or that Defendant was aware of any information that called into question the reliability of Scales' identification, and it

is undisputed that Scales provided the Facebook information to Defendant, identifying Plaintiff

as the assailant. The information obtained by Defendant in his investigation was "sufficient to

warrant a person of reasonable caution" to believe that Plaintiff had committed the stabbing and

prosecute Plaintiff for attempted murder.[2] *See Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 119

(2d Cir. 1995).

## V.    CONCLUSION

For these reasons, it is hereby

ORDERED that Defendant's motion for summary judgment (Dkt. No. 50) is

**GRANTED**; and it is further

ORDERED that the Complaint (Dkt. No. 1) is **DISMISSED** in its entirety; and it is

further

ORDERED that Plaintiff's motion for appointment of counsel (Dkt. No. 62) is **DENIED**

as moot, and the Court Clerk is directed to close this case.

**IT IS SO ORDERED.**

Dated: August 26, 2021
        Syracuse, New York

Brenda K. Sannes
U.S. District Judge

---

[2] Under New York law, "[a] person is guilty of murder in the second degree when . . . [w]ith intent to cause the death of another person, he causes the death of such person, N.Y. Penal Law § 125.25(1), and "[a] person is guilty of an attempt to commit a crime when, with intent to commit a crime, he engages in conduct which tends to effect the commission of such crime," N.Y. Penal Law § 110.00.